**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------- x

DANA BYRNE, GALE LaCAVA, JOHN CONROY,    :
PAUL CRESTI, DERRIN HAWKINS, ANNETTE    :
ILAGAN, ROGER KLEIN, VLADIMIR KVINT, KEVIN    :
McCAUSLAND, BRIAN MENEGHIN, STEVE    :
MYLENSKI, JAMIE PALAZZOLO, BELINDA PARK,    :
SEAN ROCHE, SAL TOMASIELLO, BRIAN WONG,    :     Civil Action No. 12-civ-8203 (AT)
on behalf of themselves individually and on behalf of all    :
other similarly situated persons,    :
   :
                        Plaintiffs,    :
   :
          v.    :
   :
RMJM, INC.; RMJM GROUP, INC.; RMJM    :
HILLIER GROUP, INC.; RMJM HILLIER    :
WORLDWIDE, INC.; RMJM WORLDWIDE, INC.;    :
RICHARD BAILES; DECLAN THOMPSON; FRASER    :
MORRISON; and PETER MORRISON,    :
   :
                       Defendants.    :
   :
------------------------------------------------------------------------- x


## JOINT MEMORANDUM OF LAW IN SUPPORT OF
## JOINT MOTION FOR SETTLEMENT APPROVAL


THOMPSON WIGDOR LLP            BOND SCHOENECK & KING, PLLC

85 Fifth Avenue                    330 Madison Avenue
New York, NY 10003             New York, NY 10017
Telephone:  (212) 257-6800        Telephone:  (646) 253-2300
Facsimile:  (212) 257-6845         Facsimile:  (646) 253-2301

*Counsel for Plaintiffs*               *Counsel for Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND ................................................................................................................... 1

SETTLEMENT TERMS ....................................................................................................... 3

    I.    SETTLEMENT PAYMENTS ................................................................................. 3

        A.  Payments to Plaintiffs ................................................................................... 3

        B.  Payments to Plaintiffs' Counsel ................................................................... 5

    II.    MUTUAL GENERAL RELEASES ........................................................................ 5

    III.    OTHER NON-MONETARY TERMS ..................................................................... 5

ARGUMENT ........................................................................................................................ 5

    I.    LEGAL STANDARD ............................................................................................. 6

    II.    THE SETTLEMENT WAS THE RESULT OF CONTESTED LITIGATION AND
        NEGOTIATION ..................................................................................................... 7

    III.    THE SETTLEMENT AGREEMENT REPRESENTS A FAIR COMPROMISE ........ 9

    IV.    PLAINTIFFS FACED SIGNIFICANT RISKS IN LITIGATION ............................ 11

        A.  Plaintiffs May Not Be Covered by the FLSA ..................................................... 11

        B.  Plaintiffs Faced Significant Additional Risk In Protracted Litigation ................. 14

        C.  Although Inapplicable, the Other Potentially Applicable <u>Grinnell</u> Factors Support
           Approval of the Settlement ................................................................................. 15

    V.    PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND EXPENSES ARE
        APPROPRIATE ..................................................................................................... 17

CONCLUSION ..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>Barrentine v. Arkansas Best Freight Sys., Inc.,</u>
450 U.S. 728 (1981)............................................................................................21

<u>Celio Neptali Lliguichuzhca v. Cinema 60, LLC,</u>
No. 11 Civ. 4486(GWG), 2013 U.S. Dist. LEXIS 79543 (S.D.N.Y. June 6, 2013).........14

<u>City of Detroit v. Grinnell Corp.,</u>
495 F.2d 448 (2d Cir. 1974)...........................................................6, 15, 16, 22

<u>Clark v. Ecolab, Inc.,</u>
Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198,
(S.D.N.Y. May 11, 2010)..............................................................................17, 23

<u>Cohen v. Apache Corp.,</u>
No. 89 Civ. 0076 (PNL), 1993 WL 126560 (S.D.N.Y. Apr. 21, 1993)...........................23

<u>Damassia v. Duane Reade, Inc.,</u>
04 Civ. 8819 (GEL), 04 Civ. 2295 (GEL), 2009 WL 5841128
(S.D.N.Y. July 27, 2009) ...............................................................................24

<u>deMunecas v. Bold Food LLC,</u>
09-Civ.00440 (DAB), 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010)................................6

<u>Diaz v. Eastern Locating Services,</u>
10-cv-04082 (JCF), 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ..............................6, 9

<u>Dolgow v. Anderson,</u>
43 F.R.D. 472, 487 (E.D.N.Y. 1968), reversed and remanded on other grounds, 438 F.2d
825 (2d Cir. 1970)......................................................................................24

<u>Duchene v. Michael Cetta, Inc.,</u>
No. 06 Civ. 4576 (PAC), 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ........................22

<u>Frank v. Eastman Kodak Co.,</u>
228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................24

<u>Garcia v. Pancho Villa's,</u>
No. 09-cv-486 (ETB), 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012) .................................6

<u>Gilliam v. Addicts Rehab. Ctr. Fund,</u>
05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..................................23

Goldberg v. Integrated Res. Inc.,
    209 F.3d 43 (2d Cir. 2011)......................................................................................18, 20

Herman v. RSR Sec. Servs. Ltd.,
    172 F.3d 132 (2d Cir. 1999).............................................................................................9

Hicks v. Morgan Stanley,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...................20, 22

In re Boesky Sec. Litig.,
    888 F. Supp. 551, 562 Case 1:09-cv-00440-DAB Document 58 Filed 08/06/10 Page 21 of
    2416 (S.D.N.Y. 1995).....................................................................................................20

In re Gilat Satellite Networks, Ltd.,
    No. 02 Civ. 1510 (CPS), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ........................22

In re Global Crossing Sec. & ERISA Litig.,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................20, 23

In re Indep. Energy Holdings PLC Sec. Litig.,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)..............................................................................24

In re Lloyd's Am. Trust Fund Litig.,
    No. 96 Civ.1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .......................21

In re NASDAQ Market-Makers Antitrust Litig.,
    187 F.R.D. 465 (S.D.N.Y. 1998) .....................................................................................18

In re RJR Nabisco, Inc. Sec. Litig.,
    No. 88 Civ 7905 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992).........................21

Johnson v. Brennan,
    No. 10-civ-4712 (CM), 2011 WL 4357378 (S.D.N.Y. Sept. 16, 2011) .........................6, 8

Khait v. Whirlpool Corp.,
    No. 06-Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).........17, 22, 23, 24

Lundy v. Catholic Health System of Long Island Incorporated,
    711 F.3d 106 (2d Cir. 2013)..............................................................................................9

Lynn's Food Store's, Inc. v. United States,
    679 F.2d 1350 (11th Cir. 1982) .........................................................................................6

Maley v. Dale Global Techs. Corp.,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................................21, 23

McDaniel v. County of Schenectady,
    595 F.3d 411 (2d Cir. 2010)......................................................................................17

McMahon v. Olivier Cheng Catering & Events, LLC,
    No. 08 Civ. 8713 (PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)....................17, 23

Missouri v. Jenkins,
    491 U.S. 274 (1989)..................................................................................................20

Mohney v. Shelly's Prime Steak,
    No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)...................18, 23

Parker v Jekyll and Hyde Entertainment Holdings, L.L.C.,
    No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)................20, 22

Prasker v. Asia Five Eight LLC,
    No. 08 Civ. 5811 (MGC), 2010 WL 476009, (S.D.N.Y. Jan. 6, 2010)................22, 23, 24

Rabin v. Concord Assets Group, Inc.,
    No. 89 Civ. 6130 (LBS), 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991)..........................21

Reyes v. Buddha-Bar NYC,
    No. 08 Civ. 2494 (DF), 2009 WL 5841177 (S.D.N.Y. May 28, 2009)................18, 22, 24

Sand v. Greenberg,
    No. 08 Civ. 7840 (PAC), 2010 WL 69359 (S.D.N.Y Jan. 7, 2010) ...............................24

Savoie v. Merchants Bank,
    166 F3d 456 (2d Cir. 1999).........................................................................................20

Stefaniak v. HSBC Bank USA, N.A.,
    No. 05 Civ. 720 (WMS), 2008 WL 7630102 (W.D.N.Y. June 28, 2008).......................23

Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..........................................................................18

Taft v. Ackermans,
    No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)..........................23

Varljen v. H.J. Meyers & Co.,
    No. 97 Civ. 6742 (DLC), 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)..........................20

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
    396 F.3d 96 (2d Cir. 2005)..........................................................................................17

<u>Westerfield v. Washington Mut. Bank,</u>
   Nos. 06 Civ. 2817 (JMA), 08 Civ. 00287 (JMA), 2009 WL 5841129 (E.D.N.Y. Oct. 8,
   2009) ................................................................................................................18, 22, 23

<u>Willix v. Healthfirst, Inc.,</u>
   07-civ-1143 (ENV) (RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..........................6

## **STATUTES**

29 U.S.C. 213...............................................................................................................11

29 U.S.C. 216(b) ..........................................................................................................10

29 C.F.R. § 541.603(a)...............................................................................................12, 13

29 C.F.R. §541.602 .....................................................................................................11, 12

Plaintiffs Dana Byrne, Gale LaCava, John Conroy, Paul Cresti, Derrin Hawkins, Annette Ilagan, Roger Klein, Vladimir Kvint, Kevin McCausland, Brian Meneghin, Steve Mylenski, Jamie Palazzolo, Belinda Park, Sean Roche, Sal Tomasiello and Brian Wong (collectively "Plaintiffs"), together with Defendants RMJM, Inc., RMJM Group, Inc., RMJM Hillier Group, Inc., RMJM Hillier Worldwide, Inc. RMJM Worldwide, Inc. (together, "RMJM"), Richard Bailes, Declan Thompson, Fraser Morrison and Peter Morrison (collectively, the "Individual Defendants") (RMJM and the Individual Defendants together, the "Defendants") ("Plaintiffs" and "Defendants" together are the "Parties"), hereby submit this Joint Motion For Settlement Approval of Plaintiffs' Claims Under the Fair Labor Standards Act ("FLSA").

## BACKGROUND

Subject to the final approval of this Court, Plaintiffs have resolved all their claims against Defendants – including their FLSA claims for minimum and overtime wages and liquidated damages – for $885,000, inclusive of attorneys' fees and costs.  See Gottlieb Decl.,[1] Ex A.  The causes of action alleged in the Complaint are complex and wide ranging; however, in sum, Plaintiffs are former professional employees (principal and associate architects, human resource professionals, and project managers) of Defendants who have alleged that Defendants failed to pay their wages and benefits for periods of time in 2011 and 2012, and despite certain payments being made late, portions of such wages and benefits remain outstanding.  See Gottlieb Decl., Ex. B.

Notwithstanding Defendants' potential defenses to the FLSA causes of action (including most significantly that Plaintiffs were potentially completely exempt from the protections of the FLSA altogether), potential problems related to the ability to attach liability to or collect on a

---

[1]     The Declaration of David E. Gottlieb, Esq. in support of the Parties' Joint Motion for Settlement Approval Under the Fair Labor Standards Act is referred to herein as "Gottlieb Decl."

judgment against the Individual Defendants, and representations and widely reported concerns regarding RMJM's financial stability, Plaintiffs are nevertheless being made entirely whole on all of their alleged unpaid wages (only a small portion of which would have been protected under the FLSA minimum wage laws), in addition to receiving multiples of their unpaid wages (even after payment of attorney's fees) in further compensation to cover all other claims for, *inter alia*, liquidated damages under the FLSA and violations of the New York Labor Law §§ 190 et seq. and 650 et seq. ("NYLL"), the Internal Revenue Code, 26 U.S.C. § 7434 ("IRC Section 7434"), the Employee Retirement Income Security Act ("ERISA") and New York State common law.

Plaintiff Dana Byrne commenced this action by filing the Complaint on November 9, 2012. See Dkt. No. 1. Amended Complaints were filed on January 4, 2013 and February 8, 2013, wherein the substantive allegations remained largely intact, but additional Plaintiffs joined the action. See Dkt. Nos. 14, 24; Gottlieb Decl., Ex. B. While this action was styled as a hybrid collective/class action, the litigation and discovery has at all times been limited to the 16 named Plaintiffs' claims and the settlement was not entered into on a collective or class basis.[2] On August 7, 2013, the Parties engaged in a full-day mediation with the assistance of Mediator Carol Wittenberg at JAMS in New York. The Parties resolved this matter at the mediation for $885,000 and executed a term sheet. See Gottlieb Decl., Ex. K. Thereafter, the Parties negotiated a settlement agreement which was fully executed on August 27, 2013 (the "Settlement Agreement"). See Gottlieb Decl., Ex. A. On August 27, 2013, pursuant to the Settlement Agreement, the Parties submitted a stipulation for dismissal of this action. See Dkt. No. 43. On

---

[2] Plaintiffs collectively decided that it was not in their interest to move for conditional certification of their FLSA claims. Moreover, during the Rule 16(b) conference, the Honorable P. Kevin Castel urged Plaintiffs' counsel to consider whether it was in the Plaintiffs' interest to continue the action as a representative action or whether it was more appropriate to proceed simply as a multi-plaintiff action. See Gottlieb Decl., ¶8.

August 28, 2013, the Court ordered the Parties to submit a fairness brief by September 30, 2013, in anticipation of a fairness hearing on October 15, 2013.  See Dkt. No. 44.

## SETTLEMENT TERMS

The settlement of Plaintiffs' claims was the result of contested litigation, substantial arms-length negotiation between attorneys well-versed in employment law, and the intervention of a highly-respected mediator with substantial experience in wage and hour matters.  Plaintiffs respectfully seek expedited approval of the Settlement Agreement as they are legitimately concerned that any delay in payment may result in an inability to collect as it has been well reported that RMJM is financially instable and Defendants have maintained throughout this litigation that RMJM may file for bankruptcy.  See Gottlieb Decl., Ex. L (articles regarding RMJM's financial condition); ¶28.  Defendants also seek expedited approval in order to put this matter in the past and concentrate on other business concerns.

## I.    SETTLEMENT PAYMENTS

Defendants are paying Plaintiffs a total of $885,000, inclusive of attorneys' fees and costs, to resolve Plaintiffs claims.  See Gottlieb Decl., Ex. A.  The payments to Plaintiffs total $584,200, and the payments to Plaintiffs' counsel are in the amount of $295,000 (33% of the total recovery) for attorneys' fees and $5,800 in costs.  Id.

### A.    Payments to Plaintiffs

In the Settlement Agreement, the settlement payments to Plaintiffs have been broken down into two categories:  "Wage Damages" and "Non-Wage Damages."  Id.

The "Wage Damages" are intended to compensate Plaintiffs for their unpaid wage claims which include (i) failure to pay minimum wage in violation of the FLSA and NYLL, (ii) failure to pay overtime in violation of the FLSA and NYLL, (iii) failure to pay earned wages in

3

violation of the NYLL, and (iv) unlawful wage deductions in violation of the NYLL.  <u>See</u>
Gottlieb Decl., ¶25.  In total, Plaintiffs were owed approximately $188,000 in unpaid wages.  <u>See</u>
Gottlieb Decl., ¶26.  In the Settlement Agreement, Defendants have agreed to pay "Wage
Damages" in the amount of 125,333.33.  <u>See</u> Gottlieb Decl., Ex. A.  This figure covers the entire
$188,000 of Plaintiffs' alleged unpaid wages, minus Plaintiffs' counsel's one-third contingency
fee of $62,666.67.[3]  <u>See</u> Gottlieb Decl., Ex. M; ¶31.

 The "Non-Wage Damages" are intended to compensate Plaintiffs for every other claim
including liquidated damages under the FLSA and NYLL, damages for violations of ERISA,
damages for violations of the IRC, and tort and breach of contract claims under New York State
common law.  <u>See</u> Gottlieb Decl., Ex. A; ¶27.  Other than Plaintiffs' claims for FLSA liquidated
damages, the settlement payments related to these other claims do not require judicial approval.
<u>See</u> Dkt. No. 46.  However, the Settlement Agreement does not provide any detail or
specification regarding the allocation of the Non-Wage Damages payments to any of these
alleged causes of action.  <u>See</u> Gottlieb Decl., Ex. A.  Therefore, while the Court only requested
submissions related to the fairness of the FLSA settlement, for purposes of this motion, the
Parties agree that Plaintiffs are being compensated for all claims other than the unpaid wage
claims through the Non-Wage Damages settlement payments, which includes FLSA liquidated
damages.  <u>See</u> Gottlieb Decl., ¶27.  In the Settlement Agreement, Defendants have agreed to pay
Plaintiffs the amount of $697,000 for these "Non-Wage Damages," minus Plaintiffs' counsel's
one-third contingency fee ($232,333.33) and expenses ($5,800), which comes to a total of

---

[3] Though the attorneys' fees payments in the Settlement Agreement are not divided into
"Attorneys' Fees on the Wage Damages" and "Attorneys' Fees on the Non-Wage Damages," the
attorneys' fees were calculated on a one-third basis across the aggregate settlement payments.

$458,866.67.  See Gottlieb Decl., Ex. A.  This represents approximately an additional 2.5 times Plaintiffs' total unpaid wages, even after attorneys' fees and expenses.

      **B.**      **Payments to Plaintiffs' Counsel**

Plaintiffs' counsel is being compensated at a one-third contingency rate, plus reimbursement for certain customary out-of-pocket expenses.  See Gottlieb Decl., Exs. A, M.  Accordingly, Plaintiffs' counsel is being paid aggregate attorneys' fees of $295,000, plus reimbursement for $5,800 in expenses.  See Gottlieb Decl., Ex. A.  As detailed below, Plaintiffs' counsel's contingency fee is based on the retainer agreements with Plaintiffs, and is significantly less than the value of services provided using a traditional lodestar calculation basis.  See infra, at pp. 17-25; Gottlieb Decl., ¶¶31-40; Exs. N, Q.  Plaintiffs' counsel has also waived approximately $2,010 in reimbursable out-of-pocket expenses.  See infra, at pp. 24-25; Gottlieb Decl., ¶40; Ex. Q.

**II.**      **MUTUAL GENERAL RELEASES**

In return for the above consideration, Plaintiffs will release all claims against Defendants, and Defendants will release all claims against Plaintiffs, through the effective date of the proposed Settlement Agreement.  Gottlieb Decl., Ex. A at ¶¶3-4.

**III.**      **OTHER NON-MONETARY TERMS**

In addition to the settlement payments and the mutual general releases, the Settlement Agreement also includes additional non-monetary consideration including but not limited to: (i) a personal guarantee of payment for a portion of the settlement proceeds by Defendant Peter Morrison, to the extent payment is not otherwise made in accordance with the Settlement Agreement, (ii) mutual non-disparagement, and (iii) confidentiality.  See Gottlieb Decl., Ex. A at ¶¶1(h), 5, 6.

## ARGUMENT

## I.   LEGAL STANDARD

It is well established that "Courts approve FLSA settlements where they are reached as a result of contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10-civ-4712 (CM), 2011 WL 4357378, at *12 (S.D.N.Y. Sept. 16, 2011) (citing Lynn's Food Store's, Inc. v. United States, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982); Diaz v. Eastern Locating Services, 10-cv-04082 (JCF), 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010); deMunecas v. Bold Food LLC, 09-Civ.00440 (DAB), 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010)). Moreover, "[t]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Johnson, 2011 WL 4357378, at *12; Lynn's, 679 F.2d at 1353-54; Willix v. Healthfirst, Inc., 07-civ-1143 (ENV) (RER), 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011). As long as the FLSA settlement "reflects a reasonable compromise over contested issues, the court should approve the settlement." Johnson, 2011 WL 4357378, at *12; Lynn's , 679 F.2d at 1354; Diaz,2010 WL 5507912, at *6; deMunecas, 2010 WL 3322580, at *7.

Unlike virtually all FLSA settlement approval decisions published within the Second Circuit, this is not a class action. For this reason, the Parties' joint motion for settlement approval need not track the detailed Rule 23 fairness factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974), which are generally considered on such motions and are often conflated with the standard for approval of an FLSA settlement. However, it is well established that, "the high standard for approval of a class action [settlement] under Rule 23 does not apply to an FLSA settlement." Johnson, 2011 WL 4357378, at *12; Garcia v. Pancho Villa's, No. 09-cv-486 (ETB), 2012 WL 5305694, at *6 (E.D.N.Y. Oct. 4, 2012). The more

lenient approach to approval of FLSA settlements described above is prudent given that in an

FLSA action only the rights of the individuals who have affirmatively joined the action are

affected; whereas, in a Rule 23 class action, the rights of individuals who did not actively litigate

the action are implicated.  Nonetheless, the Settlement Agreement herein is eminently fair and

would withstand the highest degree of scrutiny.

## II.     THE SETTLEMENT WAS THE RESULT OF CONTESTED LITIGATION AND NEGOTIATION

The Settlement Agreement should be approved as it was clearly reached following highly

contested litigation and negotiation between the Parties, and their respective attorneys who are

well-versed in employment law and litigation.   See Gottlieb Decl., ¶¶3-23.

The matter was commenced by the filing of a Complaint by a single Plaintiff, Dana

Byrne, which was then amended on two separate occasions to join 15 additional Plaintiffs to the

action.  Id.  The operative 180-page Second Amended Complaint set forth Plaintiffs' allegations

of unlawful conduct in great detail following significant legal research and effort.  See Gottlieb

Decl., Ex. B.  Although Plaintiffs' counsel was well aware that Defendants would claim

Plaintiffs were exempt from the FLSA, Plaintiffs alleged entitlement to damages for minimum

and overtime wages, and liquidated damages, based on a novel legal theory, described infra at

pp. 11-13.  See Gottlieb Decl., ¶6.

In litigation, Plaintiffs acted expeditiously to prosecute the FLSA action.  See Gottlieb

Decl., ¶¶3-23.  On May 10, 2013, Plaintiffs served approximately 207 document requests and

interrogatories on Defendants.[4]  Id. at ¶9; Ex. E.  Moreover, Plaintiffs expeditiously served 12

third party subpoenas on numerous entities, including Bank of America, HSBC, Intuit Online

---

[4]      Of course, not all 185 document requests related directly to the FLSA claims, given that
the Second Amended Complaint included 13 other causes of action.

Payroll, Connecticut General Life Insurance, Cigna HealthCare, Vision Service Plan, Delta Dental of New Jersey, Inc., The Standard Insurance Company, Automatic Data Processing, Inc. and Prudential Retirement.  Id. at ¶11; Ex. G.  In response to subpoenas, Plaintiffs received in excess of 3,000 pages of documents which were reviewed and analyzed prior to settlement.  See Gottlieb Decl., ¶12.  Defendants also expeditiously litigated this matter, serving 99 document requests on Plaintiffs and filing a pre-motion conference letter seeking partial judgment on the pleadings, which was vigorously opposed.[5]  See Gottlieb Decl., ¶10, Ex. F.

During the course of litigation, the Parties engaged in settlement discussions which were lengthy and protracted and involved in-person conferences and numerous telephone conferences and email communications over a period of many months.  See Gottlieb Decl., ¶15.  Ultimately, the Parties agreed to engage in mediation through JAMS, one of the premier alternative dispute resolution companies.  The Parties retained Carol Wittenberg, a well-respected mediator in the field of employment disputes, for a mediation scheduled on August 7, 2013.  See Gottlieb Decl., ¶16; Ex. J.

Prior to the mediation, the Parties held a conference call with Ms. Wittenberg to discuss the format and parameters of the mediation and subsequently submitted extensive mediation briefs that were exchanged between the Parties totaling approximately 40 pages of briefs, plus more than 500 pages of exhibits.  See Gottlieb Decl., ¶17.  On August 7, 2013, the Parties, including all 16 Plaintiffs, engaged and participated in a mediation that lasted in excess of 12 hours and ultimately resulted in the execution of a Term Sheet.  See Gottlieb Decl., ¶18; Ex. K. See e.g. Johnson, 2011 WL 4357376 at *7-8, 15 (approving FLSA settlement and noting that the parties hired a private mediator with experience in wage and hour law and engaged in a day-long

---

[5]     Only a portion of Defendants' detailed pre-motion conference letter involved Plaintiffs' FLSA claims.

mediation session); <u>Diaz</u>, 2010 WL 5507912 at *6 (approving settlement where partied attended full day mediation session with an experienced class action mediator).   Following the mediation, the Parties negotiated and exchanged multiple versions of what ultimately became the final Settlement Agreement.

On August 27, 2013, the Settlement Agreement was fully executed and the stipulation of dismissal was filed with the Court.  <u>See</u> Gottlieb Decl., Ex. A; Dkt. No. 43.  Clearly, as described, the Settlement Agreement was the result of this highly contested litigation between experienced counsel, and the intervention of a well-respected mediator.  Therefore, the Settlement Agreement should be approved.

## III.    <u>THE SETTLEMENT AGREEMENT REPRESENTS A FAIR COMPROMISE</u>

The FLSA was passed to provide a comprehensive remedial scheme to protect against the nonpayment of employee wages.  <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 144 (2d Cir. 1999).  Here, pursuant to the Settlement Agreement, and despite the major hurdles to recovery of any FLSA claims (described <u>infra</u> at pp. 11-15), Plaintiffs are being made whole on all their unpaid wages, which covers any minimum wage claims under the FLSA.

For purposes of this motion, it is important to note that the FLSA does not provide a general right of action for unpaid wages.  <u>See</u> <u>Lundy v. Catholic Health System of Long Island Incorporated</u>, 711 F.3d 106, 115-116 (2d Cir. 2013).  Rather, the FLSA only provides non-exempt employees the right to a *minimum* wage rate for all hours worked and to a premium overtime time-and-one-half rate for all hours worked in excess of 40 hours per week.  <u>Id.</u>  That is, even if vast amounts of wages are unpaid, the FLSA does not create a private right of action to recover those wages unless there is a minimum wage or overtime violation.  To seek recovery of unpaid wages not covered by the FLSA, an individual must look to state statutory law (such as

the NYLL) or common law.  Thus, for purposes of this motion in assessing the reasonableness of the Settlement Agreement as to the FLSA claims, the inquiry should be limited to Plaintiffs' minimum wage and overtime claims under the FLSA.

Plaintiffs' unpaid minimum wage damages totaled at most $25,000.[6]  See Gottlieb Decl., ¶26.  Moreover, Plaintiffs are receiving a premium above their unpaid wages to cover their potential recovery of liquidated damages which would constitute at most an additional $25,000.[7] 29 U.S.C. 216(b) (permitting recovery of 100% liquidated damages).  Plaintiffs are not receiving payments to specifically cover their potential recovery of overtime wages, though for the reasons described below, infra at pp. 11-13, recovery of such wages were based on a novel legal theory, were highly uncertain and involved substantial risk.

Payment to cover all of Plaintiffs' FLSA minimum wage damages and associated liquidated damages claims is eminently fair, particularly given that Plaintiffs are being made whole on all other unpaid wages, faced considerable risk in establishing coverage under the FLSA (described below, infra at pp. 11-13), and faced considerable risk and expense in collecting on a judgment or engaging in more protracted litigation (also described below, infra at id. at pp. 14-15).  Therefore, the Settlement Agreement should be approved.

---

[6]     As described, supra at p. 4, Plaintiffs are receiving $188,000 to cover their wage claims, minus attorneys' fees.

[7]     As described, supra at p. 4, Plaintiffs are receiving $$697,000 to cover their non-wage claims, minus attorneys' fees and costs.  This includes not only $25,000 in liquidated damages for alleged FLSA violations, but also as much as $163,000 (representing Plaintiffs' remaining unpaid wages) in liquidated damages for Plaintiffs' unpaid wage claims under the NYLL.

IV.     **PLAINTIFFS FACED SIGNIFICANT RISKS IN LITIGATION**

A.     **Plaintiffs May Not Be Covered by the FLSA**

As stated above, Plaintiffs alleged causes of action under the FLSA for unpaid minimum and overtime wages as well as liquidated damages.  The crux of these claims was that during periods of 2011 and 2012, Plaintiffs alleged that they were not paid any wages at all, and that even though some wages were retroactively paid, certain wages remained outstanding.  For the periods of time when wage payments were not made, Plaintiffs sought to recover for minimum wage violations under the FLSA.  For the entire years of 2011 and 2012, Plaintiffs sought to recover overtime pay under the FLSA on the basis that they were misclassified as "exempt" despite not being paid on a "salary basis."  Plaintiffs also sought FLSA liquidated damages.

However, to even establish entitlement to minimum and overtime wages under the FLSA, an individual must be non-exempt from the FLSA's requirements.  An individual is not entitled to any protection for minimum or overtime wages if the employer can establish entitlement to an "exemption," such as if the employee worked in a *bona fide* administrative, executive or professional capacity.  To be "exempt" under the FLSA as a *bona fide* administrative, executive or professional employee, the employer must be able to show that the employee engaged in exempt duties and was also paid on a "salary basis."  29 U.S.C. 213; C.F.R. §541.602.

Here, although Plaintiffs' counsel believes Defendants would have been unable to meet their burden to establish entitlement to FLSA exemptions, Plaintiffs' counsel also recognizes that there would have been considerable risk in defeating Defendants' FLSA exemption defense given that Plaintiffs were relying on a novel legal theory.  See Gottlieb Decl., ¶6.  Plaintiffs intended to argue that Defendants improperly "misclassified" Plaintiffs as exempt because – as a result of the periods of nonpayment – they were not paid on a "salary basis."  Id.  And, while

11

FLSA misclassification actions are hardly novel, such actions are nearly always based on the argument that the employee did not engage in "exempt" duties.  In the matter at bar, Plaintiffs did not contend that their duties were non-exempt given that they were principals, architects, human resources specialists and project managers.

Rather, Plaintiffs intended to argue that they were not paid on a "salary basis."  The Code of Federal Regulations provides that the salary basis test is met when an employee "regularly receive[s] a predetermined amount of compensation each pay period on a weekly or less frequent basis" and the "amount is not subject to reduction because of variations in the quality or quantity of the work performed."  C.F.R. §541.602.  Plaintiffs intended to argue that due to Defendants' failure to make payments for certain periods of time in 2011 and 2012, the wage payments were no longer "regular" or a "predetermined amount," and the exempt status of the affected employees was lost.  See Gottlieb Decl. at ¶6.  However, there is an utter dearth of case law even addressing this argument.  Plaintiffs' counsel has been unable to find a single case in the Second Circuit, or any sister Circuit, that has either endorsed or rejected this argument.

Defendants would have argued that the Plaintiffs' exempt status was not lost merely due to some missed payments, particularly given that the Plaintiffs earned annual compensation that far exceeded the minimum wage. Defendants would have relied on 29 C.F.R. § 541.603(a), which provides that "[a]n employer who makes improper deductions from salary shall lose [the right to invoke certain FLSA exemptions] if the facts demonstrate that the employer *did not intend to pay employees on a salary basis*."  (emphasis added).  As the Plaintiffs' salaries in this case were not subject to reduction because of the quality or quantity of the work performed, Defendants would have argued that Defendants "intended" to pay the Plaintiffs on a salary basis.

Of course, if Plaintiffs were unable to prevail on this novel argument, Plaintiffs would have been entitled to no recovery whatsoever for their FLSA claims.

Moreover, even if Plaintiffs were ultimately able to prevail on their FLSA minimum wage and overtime claims – which was quite uncertain and entailed significant risk – Defendants would have then argued that their non-exempt status should only apply for the discrete periods in which the regular, predetermined wage payments were not made, rather than for the entire calendar years of 2011 and 2012.  See 29 C.F.R. § 541.603 ("If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost *during the time period in which the improper deductions were made*") (emphasis added); See also Gottlieb Decl. at ¶6.  Defendants contend that discovery would have revealed that, for most of the Plaintiffs, wages were only withheld for a brief period during the beginning of 2012, and overtime worked by all Plaintiffs during the periods of non-payment was *de minimis*.  If successful, this defense would have substantially reduced Plaintiffs' potential FLSA overtime damages.

In short, this is not a case in which minimum wage, overtime, or liquidated damages were unquestionably owed to Plaintiffs on their FLSA claims.  Rather than "roll the dice" on establishing entitlement to coverage under the FLSA, Plaintiffs preferred to resolve their dispute in a manner that covered all their FLSA minimum wage and associated liquidated damages, in addition to covering all their other unpaid wages and providing additional recovery for the remaining causes of action.  Accordingly, the settlement represents a fair and reasonable compromise of a bona fide FLSA dispute.

**B.      Plaintiffs Faced Significant Additional Risk In Protracted Litigation**

In addition to facing substantial risk in establishing coverage under the FLSA in the first instance, Plaintiffs also faced substantial risk of payment on either a settlement (should the matter be resolved following more protracted litigation) or a judgment at the conclusion of dispositive motion practice and/or trial.

First, Defendants have represented throughout this litigation and in settlement negotiations that RMJM is in a precarious financial condition and it may be unable to sustain litigation and may file for bankruptcy.  See Gottlieb Decl. at ¶28.  While Defendants often make such representations as a negotiating tactic, such threats are potentially more credible where, as here, the company appeared to be unable to meet payroll and many other financial obligations over the previous two years.  Moreover, there have been numerous news and media reports regarding the financial problems abounding at RMJM, and their affiliated entities.  See Gottlieb Decl., Ex. L; see also Celio Neptali Lliguichuzhca v. Cinema 60, LLC, No. 11 Civ. 4486(GWG), 2013 U.S. Dist. LEXIS 79543 at *5-6 (S.D.N.Y. June 6, 2013) (approving FLSA settlement where "Plaintiffs' counsel actively sought a settlement because of plaintiffs' legitimate concerns about the collectability of any judgment against the defendants" because "[c]ase law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.") (collecting cases)

Second, Plaintiffs potentially faced significant risk in enforcing any potential judgment against the Individual Defendants to the extent RMJM became judgment proof.  Defendants already filed a pre-motion conference letter seeking, *inter alia*, dismissal of the FLSA claims as against the Individual Defendants on the basis that they do not constitute "employers" as defined under law.  See Gottlieb Decl., ¶29; Ex. H.  Moreover, even if Plaintiffs were able to obtain a

judgment against the Individual Defendants, the Individual Defendants reside abroad in the United Kingdom and Plaintiffs would be obligated to seek enforcement of a judgment in a foreign country which would likely entail significant additional time and expense with uncertain results. See Gottlieb Decl. at ¶29.

Third, Plaintiffs faced substantial costs associated with protracted litigation.  Given the vast scope of allegations in the Complaint, this litigation would have likely resulted in significant and time consuming discovery, motion practice and trial.  See Gottlieb Decl., ¶30.  Document discovery would have also almost certainly led to significant disputes and motions to compel. See Gottlieb Decl., ¶30.  At a bare minimum, there would have been 20 depositions, covering the Plaintiffs and the Individual Defendants.  See Gottlieb Decl., ¶30.  Moreover, there would have almost certainly been significant third party discovery and depositions, as indicated by the 12 subpoenas already served.  See Gottlieb Decl., ¶30; Ex. G.  It would have likely cost tens of thousands of dollars in out-of-pocket expenses if not more, and perhaps more significantly, multiple years, to get this case to summary judgment and trial. See Gottlieb Decl., ¶30.

Plaintiffs reasonably considered and calculated all these potential risks in negotiating and ultimately agreeing to the Settlement Agreement.

C.     **Although Inapplicable, the Other Potentially Applicable *Grinnell* Factors Support Approval of the Settlement**

The Second Circuit in Grinnell Corp., 495 F.2d at 448, provided the analytical framework for evaluating the substantive fairness of a Rule 23 class action settlement.  Although inapplicable here given that this is not a class or collective action settlement, the "Grinnell factors" may provide guidance in the Court's determination.  They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery contemplated; (4) the risks of establishing

liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

The <u>Grinnell</u> factors that can be applied here in a non-class, non-collective setting, although inapplicable here, militate in favor of the fairness of the Settlement Agreement.[8] ***First***, as described above, <u>supra</u> at 11-15, by reaching a favorable settlement, Plaintiffs seek to avoid significant risk, expense and delay and ensure a speedy, risk-free recovery for the class.  ***Second***, although there can be no "reaction of the class" in a non-class action, the Plaintiffs herein were all active litigants – not mere potential participants to a class action settlement or inactive FLSA collective action members who merely filed an opt-in form – and they all strongly desire to have the Settlement Agreement approved.  <u>See</u> Gottlieb Decl., ¶21.  Plaintiffs were all integrally involved in this litigation, present at the mediation, and executed the Settlement Agreement after consultation with counsel, indicating acceptance of all the terms.  <u>See</u> Gottlieb Decl., ¶22.  Furthermore, Plaintiffs are all well aware of the participation in the settlement payments by each individual Plaintiff and each Plaintiff individually executed the Settlement Agreement.  Ex. A  ***Third***, as discussed above, <u>supra</u> at 10-15, Plaintiffs' risks of establishing coverage under the FLSA, establishing individual liability under the FLSA, and Defendants' ability to withstand judgment, all favor settlement of Plaintiffs' claims and approval of the Settlement Agreement.  ***Lastly***, the settlement of the FLSA claims is more than reasonable given the risks of litigation and the fact that Plaintiffs are being paid far more than their unpaid wages as well as a premium to cover their FLSA liquidated damages.

---

[8]     As stated, not all the <u>Grinnell</u> factors can be appropriately applied in a non-class action.

V. **PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND EXPENSES ARE APPROPRIATE**

In approving a class or collective action settlement, class counsel typically apply to the court for approval of the payment of attorneys' fees.  However, it is unclear whether court approval of attorneys' fees and costs is necessary in a non-class, non-collective FLSA settlement. Nonetheless, Plaintiffs' counsel's attorneys' fees and expenses related FLSA claims are eminently reasonable and appropriate.  Plaintiffs' counsel was retained on a one-third contingency basis by all Plaintiffs and is being compensated accordingly pursuant to the Settlement Agreement.  See Gottlieb Decl., Ex. M.  Pursuant to the Settlement Agreement, Plaintiffs' counsel is being provided payments in the amount of $300,800, constituting $295,000 in attorneys' fees and $5,800 in expenses.  Gottlieb Decl., Ex. A.

In wage and hour class actions where fee applications are generally discussed, there are generally two ways to compensate attorneys:  the lode star method and the percentage method. McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).  The trend in the Second Circuit in class action settlements is to use the percentage method because it directly aligns the interests of the class and its counsel, it mimics the compensation system often used by individual clients – like this action – to compensate their attorneys, it provides powerful incentive for efficient prosecution and early resolution, and it preserves judicial resources in evaluating fee petitions.  Id.;  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . .");  Clark v. Ecolab, Inc., Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010);  McMahon v. Olivier Cheng Catering & Events, LLC, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010) (following the "trend" and awarding 33% of the fund); Khait v. Whirlpool Corp., No. 06-Civ. 6381 (ALC), 2010 WL 2025106, (E.D.N.Y. Jan.

20, 2010) at *8 (same); Westerfield v. Washington Mut. Bank, Nos. 06 Civ. 2817 (JMA), 08 Civ.

00287 (JMA), 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (same); Reyes v. Buddha-Bar

NYC, No. 08 Civ. 2494 (DF), 2009 WL 5841177, at *4(S.D.N.Y. May 28, 2009) (same);

Mohney v. Shelly's Prime Steak, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y.

Mar. 31, 2009) (same); Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d

254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage of the fund method); In

re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

Also in class actions where fee petitions are common, courts look to the reasonableness

factors articulated in Goldberg v. Integrated Res. Inc., 209 F.3d 43, 48-49 (2d Cir. 2011) in

assessing attorneys' fees awards, which include (1) the time and labor expended by counsel, (2)

the magnitude and complexities of the litigation, (3) the risk of litigation, (4) the quality of

representation, (5) the requested fee in relation to the settlement, and (6) public policy

considerations.  To the extent the Court may consider these factors in a non-class, non-collective

settlement, all these factors weigh in favor of granting approval.

Plaintiffs' counsel spent significant effort to achieve this $885,000 settlement by, *inter*

*alia*, meeting with clients, researching legal issues, preparing extensive pleadings, amending the

Complaint on two occasions, drafting exhaustive discovery requests, engaging in third-party

subpoena practice, reviewing thousands of documents, attending court conferences, drafting

letters to the Court, engaging in extensive settlement communications, preparing for and

engaging in a mediation, negotiating and finalizing a formal settlement agreement and preparing

this application for settlement approval.  See Gottlieb Decl., ¶¶34-37; Exs. A, B, E, G and I.

In performing these tasks, Plaintiffs' counsel expended more than 640  hours of attorney

time and 175 hours of paralegal and staff time.  See Gottlieb Decl., ¶35; Ex. N.  These hours

were necessary given the number of clients, the magnitude of the alleged unlawful conduct, the complexity of the alleged violations of the FLSA, NYLL, ERISA, IRC and common law, and the necessity to aggressively prosecute Plaintiffs' claims to achieve a resolution.  See Gottlieb Decl., ¶35.  Based on Plaintiffs' counsel's regular hourly rates for attorney and staff time, Plaintiffs' counsel's attorney's fees would have totaled $308,860.  See Gottlieb Decl., ¶35-66 (reps re hourly rates); Exs. O, P.

| Attorney | Rate | Hours | TOTAL |
|---|---|---|---|
| Douglas H. Wigdor | $750 | 16.80 | $12,600 |
| David E. Gottlieb | $500 | 325.20 | $162,600 |
| Michael J. Willemin | $350 | 201.80 | $70,630 |
| Tanvir H. Rahman | $350 | 8.00 | $2,800 |
| Adam Gross | $300 | 51.20 | $15,360 |
| Katherine L. Bromberg | $350 | 3.50 | $1,225 |
| Matthew R. Pisciotta | $300 | 21.90 | $6,570 |
| Christopher R. Lepore | $300 | 12.60 | $3,780 |
| Naomi D. Lantsberg | $350 | 1.40 | $490 |
| **Paralegals / Interns / Law Clerks** | **Rate** | **Hours** | **TOTAL** |
| Xenia Chiu | $175 | 165.00 | $28,875 |
| Cordelia Palitz | $175 | 4.30 | $752.50 |
| Taylor Crabill | $175 | 8.30 | $1452.50 |
| Lucas Rappoport | $175 | 3.30 | $577.50 |
| Abigail Garcia | $175 | 0.50 | $87.50 |

| Amanda Mitchell | $175 | 2.20 | $385 |
|---|---|---|---|
| Andrew Kurland | $225 | 3.00 | $675 |
| **TOTALS** | _____ | | **$308,860** |

These hourly rates are reasonable based on the rates regularly charged for attorney and staff time within this district and the rates regularly charged by Plaintiffs' counsel for clients paying on an hourly basis. Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989) (Current "market rates" are proper because such rates more adequately compensate for inflation and loss of use of funds). Moreover, Plaintiffs' counsel has been approved for these rates by courts within this Circuit. See Ex. P. Therefore, based on the time and labor expended by Plaintiffs' counsel, the one-third contingency fee totaling $295,000 is entirely reasonable.

Moreover, in class action settlements, courts often use the lodestar method of calculation as a "cross check" regarding the reasonableness of the attorneys' fees. Goldberger, 209 F.3d at 50; see, e.g., In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); Varljen v. H.J. Meyers & Co., No. 97 Civ. 6742 (DLC), 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check). The lodestar is determined by multiplying the hours reasonably expended by a reasonable hourly rate, followed by a multiplier based on factors such as the quality of representation and results achieved. Hicks v. Morgan Stanley, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at*9 (S.D.N.Y. Oct. 24, 2005); In re Boesky Sec. Litig., 888 F. Supp. 551, 562 Case 1:09-cv-00440-DAB Document 58 Filed 08/06/10 Page 21 of 2416 (S.D.N.Y. 1995); see also Goldberger, 209 F.3d at 47; Savoie v. Merchants Bank, 166 F3d 456, 460 (2d Cir. 1999); Parker v Jekyll and Hyde Entertainment Holdings, L.L.C., No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960 at *2 (S.D.N.Y. Feb. 9, 2010). Typically, courts use

multipliers of 2 to 6 times the lodestar.  See e.g. In re Lloyd's Am. Trust Fund Litig., No. 96 Civ.1262 (RWS), 2002 WL 31663577 at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); Maley v. Dale Global Techs. Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); In re NASDAQ Market-Makers Antitrust Litig.,187 F.R.D. at 473 (awarding multiplier of 3.97 times lodestar); Rabin v. Concord Assets Group, Inc., No. 89 Civ. 6130 (LBS), 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4); In re RJR Nabisco, Inc. Sec. Litig., No. 88 Civ 7905 (MBM), 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6).  Here, of course, Plaintiffs' counsel's contingency fee equals a *fraction* – not a multiplier – of the lodestar.  Therefore, this factor heavily favors approval of the attorneys' fees.

The magnitude and complexity of the issues are difficult factors to consider in approving a fee award; however, courts have recognized that FLSA claims typically involve complex issues of fact and law.  Barrentine v. Arkansas Best Freight Sys., Inc., 450 U.S. 728, 743 (1981). The matter at bar is far more complex than the typical FLSA action as numerous addition statutory and common law causes of action were involved and even necessitated a 180 page Complaint. Moreover, Plaintiffs' counsel sought to pursue the FLSA claims based on novel legal arguments, described supra at pp. 11-13.  Therefore, this factor also favors approval.

The risks of litigation also favor approval.  Plaintiffs' counsel undertook representation of 16 Plaintiffs in an action where recovery seemed uncertain due to Defendants' financial condition and even greater risk in establishing entitlement to coverage under the FLSA. However, Plaintiffs' counsel prosecuted this action on a wholly contingent basis in the face of tremendous risk.  Therefore, this factor also favors approval.  Grinnell Corp., 495 F.2d at 471.

Courts consider the size of the fee in relation to the size of the settlement to protect against the possibility that the percentage award constitutes a "windfall."  See, e.g., In re Gilat Satellite Networks, Ltd., No. 02 Civ. 1510 (CPS), 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). With regards to settlements in the realm of $800,000, courts routinely grant fee awards in the amount of thirty-three percent of the common fund. See Parker, 2010 WL 532960, at *2 (awarding class counsel 33% of $745,000 fund in FLSA and NYLL restaurant case); Reyes, 2009 WL 5841177, at *3-4 (awarding 33% of $710,000 fund in FLSA and NYLL tip misappropriation case). Additionally, courts in this Circuit have just as routinely granted fee awards greater than thirty-three percent, even in cases with settlement funds in excess of $800,000, notwithstanding the rule that "as the size of the settlement fund increases, the percentage of the fund awarded as fees often decreases so as to prevent a windfall to plaintiffs' attorneys."  Hicks, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (citation omitted). See Clark, 2010 WL 1948198, at *8-9 (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); Khait, 2010 WL 2025106, at *8 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811 (MGC), 2010 WL 476009 at *6, (S.D.N.Y. Jan. 6, 2010) (awarding class counsel fees of $346,500 out of $1,050,000 settlement fund in FLSA and NYLL tip misappropriation restaurant case); Westerfield, 2009 WL 5841129, at *4-5 (awarding 30% of $38,000,000 fund in nationwide overtime suit); Duchene v. Michael Cetta, Inc., No. 06 Civ. 4576 (PAC), 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip misappropriation case); Mohney, 2009 WL 5851465, at *4-5 (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case); Stefaniak v. HSBC Bank USA, N.A., No. 05 Civ. 720 (WMS), 2008 WL

7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and

NYLL case); Maley, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33 1/3% fee of fund

valued at $11.5 million); Cohen v. Apache Corp., No. 89 Civ. 0076 (PNL), 1993 WL 126560, at

*1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund). Therefore, fees

amounting to thirty-three percent of the settlement amount are reasonable and "consistent with

the norms of class litigation in this circuit." Gilliam v. Addicts Rehab. Ctr. Fund, 05 Civ. 3452

(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

  The quality of representation factor also favors settlement.  To determine the quality of

representation, courts often review the recovery obtained and the background and experience of

the attorneys involved in the action.  Taft v. Ackermans, No. 02 Civ. 7951 (PKL), 2007 WL

414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing In re Global Crossing, 225 F.R.D. at 467).

Plaintiffs' counsel obtained significant recovery for Plaintiffs that far exceeded their claims for

unpaid wages, even after payment of attorneys' fees.  Moreover, Plaintiffs' counsel has

substantial experience prosecuting employment-related cases including FLSA matters, and

Plaintiffs' counsel skill and aggressive prosecution of  this matter is directly responsible for this

result.  See Clark, 2010 WL 1948198, at *8 ("Class Counsel are experienced class action

employment lawyers and have extensive experience prosecuting and settling wage and hour class

actions"); McMahon, 2010 WL 2399328, at *6-7 (O&G are "experienced employment lawyers

with good reputations among the employment law bar"); Khait, 2010 WL 2025106, at *8 (O&G

lawyers "have substantial experience prosecuting and settling . . . wage and hour class

actions[.]"); Prasker, 2010 WL 476009, at *6 Case 1:09-cv-00440-DAB Document 58 Filed

08/06/10 Page 17 of 2412 (S.D.N.Y. Jan. 6, 2010) (same); Westerfield, 2009 WL 5841129, at *8

(same); Damassia v. Duane Reade, Inc., 04 Civ. 8819 (GEL), 04 Civ. 2295 (GEL), 2009 WL

5841128, at *4 (S.D.N.Y. July 27, 2009) (noting that O&G "has substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law"); Reyes, 2009 WL 5841177, at *3 ("[O&G] 'has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area.'").

Public policy favors approval as cases such as these serve the dual purposes of encouraging "private attorney generals" to seek redress for violations and discouraging misconduct of a similar nature.  See Prasker, 2010 WL 476009, at *6; Khait, 2010 WL 2025106, at *8; Dolgow v. Anderson, 43 F.R.D. 472, 487 (E.D.N.Y. 1968) (reversed and remanded on other grounds, 438 F.2d 825 (2d Cir. 1970)). If the court denied Plaintiffs' counsel's attorneys' fees – which are far less than their regular hourly rate let alone factoring in a lodestar multiplier – it would discourage attorneys from representing clients in actions such as these.  Frank v. Eastman Kodak Co., 228 F.R.D. 174, 189 (W.D.N.Y. 2005). See also Sand v. Greenberg, No. 08 Civ. 7840(PAC), 2010 WL 69359 at *3 (S.D.N.Y. Jan. 7, 2010); Prasker, 2010 WL 476009, at *6; Khait, 2010 WL 2025106, at *8.

Lastly, Plaintiffs' counsel is being reimbursed in the amount of $5,800 for litigation expenses.  See Gottlieb Decl., ¶40; Ex. Q.  Here, Plaintiffs' counsel's expenses were necessary and directly related to the representation and ultimate result.   In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).  Moreover, Plaintiffs' counsel's actual expenses constitute $7,810, but Plaintiffs' counsel has waived approximately $2,010 in expenses. See Gottlieb Decl., ¶40.  Therefore, Plaintiffs' counsel's expenses should be approved.

In sum, Plaintiffs' counsel's attorney's fees and expenses are eminently reasonable and appropriate and should be approved by the Court along with the remainder of the Settlement Agreement.

## **CONCLUSION**

For the reasons set above, Plaintiffs respectfully request that the Court grant the Parties Joint Motion for Settlement Approval.

Dated: September 30, 2013
New York, New York                      Respectfully submitted,

THOMPSON WIGDOR LLP                      BOND SCHOENECK & KING, PLLC


By: _____/s/_____         By: _____/s/_____
        Douglas H. Wigdor                     John S. Ho
        David E. Gottlieb                      Kate I. Reid
        Michael J. Willemin

85 Fifth Avenue                          330 Madison Avenue
New York, NY 10003                       New York, NY 10017
Telephone:  (212) 257-6800               Telephone:  (646) 253-2300
Facsimile:  (212) 257-6845               Facsimile:  (646) 253-2301
dwigdor@thompsonwigdor.com               jho@bsk.com
dgottlieb@thompsonwigdor.com             reidk@bsk.com
mwillimen@thompsonwigdor.com

*Counsel for Plaintiffs*                 *Counsel for Defendants*