UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
DANA BYRNE, GALE LaCAVA, JOHN CONROY, :
PAUL CRESTI, DERRIN HAWKINS, ANNETTE :
ILAGAN, ROGER KLEIN, VLADIMIR KVINT, KEVIN :
McCAUSLAND, BRIAN MENEGHIN, STEVE :
MYLENSKI, JAMIE PALAZZOLO, BELINDA PARK, :
SEAN ROCHE, SAL TOMASIELLO, BRIAN WONG, on :    Civil Action No. 12-civ-8203 (AT)
behalf of themselves individually and on behalf of all other :
similarly situated persons, :
 :
                        Plaintiffs, :
 :
             v. :
 :
RMJM, INC.; RMJM GROUP, INC.; RMJM :
HILLIER GROUP, INC.; RMJM HILLIER :
WORLDWIDE, INC.; RMJM WORLDWIDE, INC.; :
RICHARD BAILES; DECLAN THOMPSON; FRASER :
MORRISON; and PETER MORRISON, :
 :
                        Defendants. :
 :
------------------------------------------------------------------------ x

## DECLARATION OF DAVID E. GOTTLIEB

DAVID E. GOTTLIEB, an attorney admitted to practice before this Court, hereby deposes and states under penalty of perjury, that:

1.      I am a member of the bar of this Court and am associated with the law firm of Thompson Wigdor LLP ("TW"). We are counsel for Plaintiffs Dana Byrne, Gale LaCava, John Conroy, Paul Cresti, Derrin Hawkins, Annette Ilagan, Roger Klein, Vladimir Kvint, Kevin McCausland, Brian Meneghin, Steve Mylenski, Jamie Palazzolo, Belinda Park, Sean Roche, Sal Tomasiello and Brian Wong (collectively "Plaintiffs") in the above-captioned action against RMJM, Inc., RMJM Group, Inc., RMJM Hillier Group, Inc., RMJM Hillier Worldwide, Inc. RMJM Worldwide, Inc. (together, "RMJM"), Richard Bailes, Declan Thompson, Fraser

Morrison and Peter Morrison (collectively, the "Individual Defendants") (RMJM and the Individual Defendants together, the "Defendants") ("Plaintiffs" and "Defendants" together are the "Parties").

2. I submit this declaration with the exhibits attached hereto in support of the Parties' Joint Motion For Settlement Approval. Attached hereto as **Exhibit A** is a true and correct copy of the Settlement Agreement.

I. <u>**Background and Litigation History**</u>

3. On November 9, 2012, Plaintiff Dana Byrne filed the Complaint, commencing the instant action. <u>See</u> Dkt. No. 1.

4. On January 4, 2013, Plaintiffs filed the First Amended Complaint, which remained substantively nearly identical, but added Plaintiffs Gale LaCava, John Conroy, Paul Cresti, Annette Ilagan, Roger Klein, Kevin McCausland, Steve Mylenski, Jamie Palazzolo, Sean Roche, Sal Tomasiello and Brian Wong. <u>See</u> Dkt. No. 14.

5. On February 8, 2013, Plaintiffs filed the Second Amended Complaint, which remained substantively nearly identical, but added Plaintiffs Derrin Hawkins, Vladimir Kvint, Brian Meneghin, and Belinda Park. The Second Amended Complaint included causes of action under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the Internal Revenue Code, 26 U.S.C. § 7434 ("IRC Section 7434"), the Employee Retirement Income Security Act ("ERISA") and New York State common law. Attached hereto as **Exhibit B** is a true and correct copy of Plaintiffs' Second Amended Complaint.

6. Although Plaintiffs' counsel was well aware that Defendants would claim that Plaintiffs were exempt from the FLSA, Plaintiffs intended to argue that they were non-exempt from the FLSA on the grounds that they were not paid on a salary basis during 2011 and 2012.

Although Plaintiffs' counsel believes Defendants would have been unable to meet their burden to establish entitlement to FLSA exemptions, Plaintiffs' counsel also recognizes that there would have been considerable risk in defeating Defendants' FLSA exemption defense given that Plaintiffs were relying on a novel legal theory.  Moreover, even if Plaintiffs were ultimately able to prevail on their FLSA minimum wage and overtime claims – which was quite uncertain and entailed significant risk – Defendants would have then argued that their non-exempt status should only apply for the discrete periods in which the regular, predetermined wage payments were not made, rather than for the entire calendar years of 2011 and 2012.

7. On March 8, 2013, Defendants filed their Answer.  Attached hereto as **Exhibit C** is a true and correct copy of Defendants' Answer.

8. On April 10, 2013, a Rule 16(b) conference was held for The Honorable P. Kevin Castel.  During the Rule 16(b) conference, the Honorable P. Kevin Castel urged Plaintiffs' counsel to consider whether it was in the Plaintiffs' interest to continue the action as a representative action or whether it was more appropriate to proceed simply as a multi-plaintiff action.  Attached hereto as **Exhibit D** is a true and correct copy of the Case Scheduling Order.

9. On May 10, 2013, Plaintiffs' counsel served document requests and interrogatories on Defendants which totaled approximately 207 requests.  Attached hereto as **Exhibit E** is a true and correct copy of Plaintiffs' first set of document requests and interrogatories.

10. On May 10, 2013, Defendants' counsel served document requests and interrogatories on Plaintiffs which totaled approximately 99 requests.  Attached hereto as **Exhibit F** is a true and correct copy of Defendants first set of document requests and interrogatories.

11.     Between June 5, 2013 and July 30, 2013, Plaintiffs' counsel served approximately 12 third party subpoenas on Bank of America, HSBC, Intuit Online Payroll, Connecticut General Life Insurance, Cigna HealthCare, Vision Service Plan, Delta Dental of New Jersey, Inc., The Standard Insurance Company, Automatic Data Processing, Inc. and Prudential Retirement. Attached hereto as **Exhibit G** are true and correct copies of the third-party subpoenas (without attachments).

12.     In response to the subpoenas, Plaintiffs' counsel received in excess of 3,000 pages of documents which were reviewed and analyzed prior to settlement.

13.     On July 5, 2013, Defendants filed a pre-motion conference letter regarding a proposed motion for partial judgment. Attached hereto as **Exhibit H** is a true and correct copy of Defendants' pre-motion conference letter.

14.     On July 15, 2013, Plaintiffs filed a response to a pre-motion conference letter regarding Defendants' proposed motion for partial judgment. Attached hereto as **Exhibit I** is a true and correct copy of Plaintiffs' pre-motion conference response letter.

15.     During the course of litigation, the Parties engaged in settlement discussions which were lengthy and protracted and involved in-person conferences and numerous telephone conferences and email communications over a period of many months.

16.     The Parties agreed to hold a mediation at JAMS with the assistance of Carol Wittenberg as mediator.  Ms. Wittenberg is a well-respected mediator with substantial experience in labor and employment matters.  Attached hereto as **Exhibit J** is a true and correct copy of Ms. Wittenberg's biography page on JAMS website.

17. Prior to the mediation, the Parties engaged in a pre-mediation conference call with Ms. Wittenberg to discuss the logistics and parameters of the mediation and submitted mediation briefs that totaled more than 40 pages and in excess of 500 pages of exhibits.

18. On August 7, 2013, the Parties, including all 16 Plaintiffs, engaged and participated in a mediation that lasted in excess of 12 hours and ultimately resulted in the execution of a Term Sheet.  Attached hereto as **Exhibit K** is a true and correct copy of the term sheet.

19. Following the mediation, the Parties negotiated and exchanged multiple versions of what ultimately became the final Settlement Agreement.  On August 27, 2013, a final settlement agreement was fully executed by all Parties.  **Exhibit A**.

20. Plaintiffs are in unanimous and overwhelming agreement that the Settlement Agreement is a fair and reasonable compromise and seek expedited payment in accordance with the terms of the Settlement Agreement.

21. The Plaintiffs herein were all active litigants – not mere potential participants to a class action settlement or inactive FLSA collective action members who merely filed an opt-in form – and they all strongly desire to have the Settlement Agreement approved.

22. Plaintiffs were all integrally involved in this litigation, present at the mediation, and executed the Settlement Agreement after consultation with counsel, indicating acceptance of all the terms.

23. The Settlement Agreement was the result of highly contested litigation and negotiations, as described above.

24. In the Settlement Agreement, the settlement payments to Plaintiffs have been broken down into two categories:  "Wage Damages" and "Non-Wage Damages."

25. The "Wage Damages" are intended to compensate Plaintiffs for their unpaid wage claims which include (i) failure to pay minimum wage in violation of the FLSA and NYLL, (ii) failure to pay overtime in violation of the FLSA and NYLL, (iii) failure to pay earned wages in violation of the NYLL, and (iv) unlawful wage deductions in violation of the NYLL.

26. Based on all of the available information and documents provided by all Parties, Plaintiffs were owed approximately $188,000 in unpaid wages. At most, Plaintiffs were owed $25,000 in minimum wage damages for the periods in which wage payments were never made.

27. The "Non-Wage Damages" are intended to compensate Plaintiffs for every other claim including liquidated damages under the FLSA and NYLL, damages for violations of ERISA, damages for violations of the IRC, and tort and breach of contract claims under New York State common law. Therefore, while the Court only requested submissions related to the fairness of the FLSA settlement, for purposes of this motion, the Parties agree that Plaintiffs are being compensated for all claims other than the unpaid wage claims through the Non-Wage Damages settlement payments, which includes FLSA liquidated damages.

28. Throughout this litigation, RMJM has represented through counsel that their financial condition is precarious and that they may file for bankruptcy. This proposition is supported by the fact that RMJM affiliates abroad have gone into receivership and it has been widely reported that RMJM is financially unstable. Attached hereto as **Exhibit L** are true and correct copies of articles regarding RMJM's financial condition.

29. Plaintiffs potentially faced significant risk in enforcing any potential judgment against the Individual Defendants to the extent RMJM became judgment proof. Defendants already filed a pre-motion conference letter seeking, *inter alia*, dismissal of the FLSA claims as against the Individual Defendants on the basis that they do not constitute "employers" as defined

under law.  Moreover, even if Plaintiffs were able to obtain a judgment against the Individual Defendants, the Individual Defendants reside abroad in the United Kingdom and Plaintiffs would be obligated to seek enforcement of a judgment in a foreign country which would likely entail significant additional time and expense with uncertain results.

30. Plaintiffs faced substantial costs associated with protracted litigation.  Given the vast scope of allegations in the Complaint, this litigation would have likely resulted in significant and time consuming discovery, motion practice and trial.  Document discovery would have also almost certainly led to significant disputes and motions to compel.  At a bare minimum, there would have been 20 depositions, covering the Plaintiffs and the Individual Defendants.  Moreover, there would have almost certainly been significant third party discovery and depositions, as indicated by the 12 subpoenas already served.  It would have likely costs tens of thousands of dollars in out-of-pocket expenses if not more, and perhaps more significantly, multiple years, to get this case to summary judgment and trial.

## II.     Plaintiffs' Attorneys' Fees and Expenses

31. Plaintiffs seek approval of the one-third contingency attorney's fees, plus expenses, based on the terms set forth in the retainer agreements with Plaintiffs.  Attached hereto as **Exhibit M** are true and correct copy of the Plaintiffs' retainer agreements (redacted to show only the relevant information).

32. Plaintiffs' counsel also maintains contemporaneous computerized daily records of time expended in all matters through the use of LexisNexis® Practice Advantage ("Practice Advantage"), a comprehensive litigation management software program.  Practice Advantage tracks and organizes time, expenses and other information concerning all matters handled by the firm.

33. Every attorney, paralegal and staff member who has worked on this case has kept contemporaneous records of their time spent on this litigation. The detailed time, billing and expense records are set forth by Practice Advantage. Attached hereto as **Exhibit N** are detailed billing and time records associated with this matter.

34. Plaintiff's counsel spent significant effort to achieve this $885,000 settlement through substantial efforts including but not limited to meeting with clients, researching legal issues, preparing extensive pleadings, amending the Complaint on two occasions, drafting exhaustive discovery requests, engaging in third-party subpoena practice, reviewing thousands of documents, attending court conferences, drafting letters to the Court, engaging in extensive settlement communications, preparing for and engaging in a mediation, negotiating and finalizing a formal settlement agreement and preparing this application for settlement approval.

35. In performing these tasks, Plaintiff's counsel expended more than 640 hours of attorney time and 175 hours of paralegal and staff time. These hours were necessary and reasonable given the number of clients, the magnitude of the alleged unlawful conduct, the complexity of the alleged violations of the Fair Labor Standards Act ("FLSA'), New York Labor Law ("NYLL") §§ 190 et seq. and 650 et seq., the Internal Revenue Code ("IRC") 26 U.S.C. § 7434, the Employee Retirement Income Security Act ("ERISA") and New York State common law, and the necessity to aggressively prosecute Plaintiffs' claims to achieve a resolution. Based on Plaintiffs' counsel's regular hourly rates for attorney and staff time, Plaintiffs' counsel's attorney's fees would have totaled $308,860. The chart below summaries the billing figures set forth in **Exhibit N**.

| Attorney | Rate | Hours | TOTAL |
|---|---|---|---|
| Douglas H. Wigdor | $750 | 16.80 | $12,600 |
| David E. Gottlieb | $500 | 325.20 | $162,600 |
| Michael J. Willemin | $350 | 201.80 | $70,630 |
| Tanvir H. Rahman | $350 | 8.00 | $2,800 |
| Adam Gross | $300 | 51.20 | $15,360 |
| Katherine L. Bromberg | $350 | 3.50 | $1,225 |
| Matthew R. Pisciotta | $300 | 21.90 | $6,570 |
| Christopher R. Lepore | $300 | 12.60 | $3,780 |
| Naomi D. Lantsberg | $350 | 1.40 | $490 |
| **Paralegals / Interns / Law Clerks** | **Rate** | **Hours** | **TOTAL** |
| Xenia Chiu | $175 | 165.00 | $28,875 |
| Cordelia Palitz | $175 | 4.30 | $752.50 |
| Taylor Crabill | $175 | 8.30 | $1452.50 |
| Lucas Rappoport | $175 | 3.30 | $577.50 |
| Abigail Garcia | $175 | 0.50 | $87.50 |
| Amanda Mitchell | $175 | 2.20 | $385 |
| Andrew Kurland | $225 | 3.00 | $675 |
| **TOTAL:** | | | **$308,860** |

36.   The matter at bar is far more complex than the typical FLSA action, as numerous additional statutory and common law causes of action were involved and even necessitated a

180-page Complaint.  Moreover, Plaintiffs' counsel sought to pursue the FLSA claims based on novel legal arguments.

37.     Plaintiff's counsel undertook representation of 16 Plaintiffs in an action where recovery seemed uncertain due to Defendants' financial condition and even greater risk in establishing entitlement to coverage under the FLSA.  However, Plaintiff's counsel prosecuted this action on a wholly contingent basis in the face of tremendous risk.

38.     My customary hourly rate is $500.  The hourly rates of other lawyers and staff are consistent with the customary rates charged for their services and the prevailing rates in the Southern District of New York.  Plaintiffs' counsel regularly charges $750 for partner time, $300 to $650 for associates' time, depending on seniority, and $180 for a paralegal's time.  Attached hereto as **Exhibit O** are sample retainer agreements (with client names and identifying information redacted) reflecting these rates or higher.  The specific rates requested herein for myself and Mr. Wigdor have been approved in the Southern District of New York in prior cases.  Attached hereto as **Exhibit P** is a declaration I submitted in support of a fee application in June, 2012, requesting rates of $500 per hour for myself and $750 per hour for Mr. Wigdor, as well as the decision granting the requests.

39.     In addition, after consulting with other attorneys in the field, we have determined that the hourly rates charged by attorneys at TW are consistent with the rates charged by other attorneys and staff of comparable experience and expertise.

40.     Plaintiff's out-of-pocket expenses totaled $7,810.45, which included, but was not limited to, filing fees, process service fees, copying fees, messenger service fees, and postage.  The costs and out-of-pocket expenses incurred are of the type routinely billed by Plaintiffs' counsel's fee paying clients.  Plaintiffs are being reimbursed for expenses in the amount of

$5,800, and are waiving reimbursement of expenses in the amount of $2,010.45.  Attached hereto as **Exhibit Q** are detailed expense records associated with this matter.

## QUALIFICATIONS OF DAVID E. GOTTLIEB

41. I am a senior associate at TW.  I received a B.A. in political science and philosophy from the University of Arizona in 2002.  I received a J.D. from the University of Miami in 2005.

42. While in law school, I clerked for The Innocence Project, a nationally recognized non-profit law clinic devoted to the exoneration of wrongfully convicted inmates through the use of DNA evidence.  While there, among other successes, I was instrumental in obtaining the commutation of an inmate's death sentence based on exculpatory DNA evidence.

43. I am a member of the State Bar of New York and also the New York State Bar Association.  I am admitted to practice in New York, as well as the Eastern and Southern Districts of New York and the Second Circuit Court of Appeals.  Prior to joining TW, I worked at a boutique law firm litigating employment matters, in addition to a variety of other litigation.  Since joining TW in 2010, and in my professional career, I have been involved in hundreds of employment matters including complex wage-and-hour class actions and large multi-plaintiff discrimination cases.  I handle matters from inception through trial and appeal.  In March 2012, I was co-lead counsel in a two-plaintiff discrimination and retaliation trial before The Honorable Leonard D. Wexler.

44. I have been lead counsel in this matter, which has involved significant expenditures of time managing numerous clients and extensive motion practice.  I have been extremely successful in the litigation of this matter, obtaining a settlement totaling more than four times the total amount of Plaintiffs' unpaid wages.  I have also managed and supervised the

work of other associates and paralegals on this matter, and have avoided the need for significant expenditure of partner hours on this case.

45. The hourly rate charged for my services is $500 per hour.

## QUALIFICATIONS OF DOUGLAS H. WIGDOR

46. Douglas H. Widgor is a founding partner of TW. Mr. Wigdor has been practicing law for over ten years with a primary focus on litigation and labor and employment law. Mr. Wigdor is a member of the bars of the States of New York, Pennsylvania and the District of Columbia. Mr. Wigdor is also admitted to practice before the United States Supreme Court, the Second Circuit Court of Appeals, and the Eastern, Southern and Northern Districts of New York. Mr. Wigdor is admitted to practice law in the United Kingdom and Mr. Wigdor is a qualified solicitor in England and Wales.

47. Mr. Wigdor received an undergraduate degree in Political Science from Washington University in St. Louis and graduated *cum laude* in 1990. Mr. Wigdor received a Juris Doctor from the Catholic University of America in Washington, D.C. in 1993, where he graduated at the top of his class. During law school, Mr. Wigdor was a Senior Staff Member of the *Catholic University Law Review*. Mr. Wigdor received a Masters Degree in Politics from Oxford University in England in 1995. While at Oxford, Mr. Wigdor was an editor of the *Oxford International Review*.

48. Mr. Wigdor served as an Assistant District Attorney in Suffolk County, New York from 1995 to 1998. Mr. Wigdor then had the distinguished privilege to serve as a federal law clerk to United States District Judge Arthur D. Spatt from 1998 to 1999, where he was exposed to a broad range of complex civil and criminal litigation. Mr. Wigdor was a senior lawyer in the labor and employment section of Morgan, Lewis & Bockius LLP ("Morgan

Lewis") from 2000 through 2003.  Since founding TW, Mr. Wigdor has represented management side employers, high-level employees and entry-level employees, such as Plaintiffs.  The vast majority of his current practice is comprised of labor and employment related to litigation in both federal and state courts.

49. The current hourly rate charged for Mr. Wigdor's services is $750 per hour.

## QUALIFICATIONS OF MICHAEL J. WILLEMIN

50. Michael J. Willemin is an associate at TW.  Mr. Willemin received a B.A. in political science from Providence College in 2008.  Mr. Willemin received a J.D. from Fordham University in 2011.

51. While in law school, Mr. Willemin clerked for Legal Services – NYC Bronx, as well as the New York County District Attorneys' Office and New York City Council (General Counsel's Office).  Mr. Willemin was also a member of Fordham University's Criminal Defense Clinic, during which he represented misdemeanor criminal defendants through the early stages of criminal litigation, motion practice and investigation.

52. Mr. Willemin is a member of the State Bar of New York and also the New York State Bar Association.  Mr. Willemin is admitted to practice in New York, as well as the Eastern and Southern Districts of New York and the Commonwealth of Massachusetts.  Since joining TW in 2011, Mr. Willemin has been involved in dozens of employment matters including complex wage-and-hour class and collective actions and large multi-plaintiff discrimination cases.  Mr. Willemin has handled matters at all stages of litigation, including second-chairing a discrimination trial in June 2012 before The Honorable Leonard D. Wexler.

53. The hourly rate charged for Mr. Willemin's services is $350 per hour.

## QUALIFICATIONS OF OTHER ATTORNEYS AND STAFF

54. Tanvir H. Rahman has been an attorney at TW since October 2011. Mr. Rahman assisted in legal research. Mr. Rahman received his J.D. from New York University, after receiving his B.A. from Macualey Honors College at Hunter College. The hourly rate charged for Mr. Rahman's services is $350 per hour.

55. Adam Gross is a former associate at TW, who worked for the firm from September 2010 to March, 2013. Mr. Gross assisted in legal research and drafting the Amended Complaint. Mr. Gross received his J.D. from Fordham University, after receiving his B.A. from the University of Michigan. The hourly rate charged for Mr. Gross's services was $300 per hour.

56. Naomi D. Lantsberg is a former associate at TW, who worked for the firm from May 2013 to August, 2013. Ms. Lantsberg assisted in legal research. Ms. Lantsberg received her J.D. from the Benjamin N. Cardozo School of Law, after receiving her B.A. from Barnard College, Columbia University. The hourly rate charged for Mr. Lantsberg's services was $350 per hour.

57. Katherine L. Bromberg is a former associate at TW, who worked for the firm from May 2013 to August, 2013. Ms. Bromberg assisted in third-party discovery. Ms. Bromberg received her J.D. from the University of California, Berkeley Law, after receiving her B.A. from Barnard College, Columbia University. The hourly rate charged for Mr. Bromberg's services was $350 per hour.

58. Christopher R. Lepore has been an attorney at TW since April 2013. Mr. Lepore assisted in legal research for the mediation in this action. Mr. Lepore received his J.D. from

Washington University in St. Louis, after receiving his B.A. from the University of Notre Dame. The hourly rate charged for Mr. Lepore's services is $300 per hour.

59. Matthew R. Pisciotta has been an attorney at TW since May 2013. Mr. Pisciotta assisted in legal research and drafting with regard to Defendants' pre-motion conference letter concerning an anticipated motion for partial judgment on the pleadings. Mr. Pisciotta received his J.D. from Brooklyn Law School, after receiving his B.A. from Lafayette College. The hourly rate charged for Mr. Pisciotta's services is $300 per hour.

60. Andrew C. Kurland has been a law clerk at TW since September 2013. Mr. Kurland assisted in legal research and drafting with regard to the joint-motion for approval of the settlement of this action. Mr. Kurland received his J.D. from the University of Michigan, after receiving his B.A. from the University of Michigan. The hourly rate charged for Mr. Kurland's services is $225 per hour.

61. Xenia Chiu is a paralegal with TW who assisted with paralegal duties associated with this matter. Ms. Chiu received her B.A. from Washington University in St. Louis. The hourly rate for Ms. Chiu's services is $175 per hour.

62. Cordelia J. Palitz is a paralegal with TW who assisted with paralegal duties associated with this matter. Ms. Palitz received her B.A. from Washington University in St. Louis. The hourly rate for Ms. Palitz's services is $175 per hour.

63. Taylor Crabill is a paralegal with TW who assisted with paralegal duties associated with this matter. Mr. Crabill received his B.A. from Queens College. The hourly rate for Mr. Crabill's services is $175 per hour.

64. Abigail Garcia was a paralegal with TW who assisted with paralegal duties associated with this matter. Ms. Garcia received her B.A. from New York University. The hourly rate for Ms. Garcia's services was $175 per hour.

65. Lucas Rappoport was a paralegal with TW who assisted with paralegal duties associated with this matter. Mr. Rappoport received his B.A. from Washington University in St. Louis. The hourly rate for Ms. Rappoport's services was $175 per hour.

66. Amanda Mitchell is an intern with TW who assisted with paralegal duties associated with this matter. Ms. Mitchell received her LLB from Cardiff University. The hourly rate for Ms. Mitchell's services is $175 per hour.

Dated: September 30, 2013
       New York, New York

                                        Respectfully submitted,

                                        **THOMPSON WIGDOR LLP**


                                        By: _____/s/_____
                                              David E. Gottlieb

                                        85 Fifth Avenue
                                        New York, New York 10003
                                        Telephone: (212) 257-6800
                                        Facsimile:  (212) 257-6845
                                        dwigdor@thompsonwigdor.com

                                        *Counsel for Plaintiffs*